# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JARED T.,

**Plaintiff,**

v.

**FRANK BISIGNANO,**
**Commissioner of the Social Security Administration,**

**Case No. 25-CV-1343**

**Defendant.**

## DECISION AND ORDER

### 1. Introduction

Alleging he has been disabled since July 6, 2017 (Tr. 13), Plaintiff Jared T. seeks supplemental security income and disability insurance benefits. After his application was denied initially (Tr. 143–51) and again upon reconsideration (Tr. 155–61), a hearing was held before Administrative Law Judge (ALJ) Ahavaha Pyrtel on April 25, 2019. (Tr. 35–66.) On May 9, 2019, ALJ Pyrtel issued a written decision concluding that Plaintiff was not disabled. (Tr. 10–34.) After the Appeals Council denied Plaintiff's request for review on March 31, 2020 (Tr. 1–6), he filed an action in this court. (Tr. 1142–49.)

On February 22, 2021, pursuant to Sentence Four of 42 U.S.C. § 405(g), District Court Judge William Griesbach remanded Plaintiff's action to the agency for further

proceedings. (Tr. 1153–54.) On March 24, 2021, the Appeals Council issued a remand order. (Tr. 1158–63.) On August 26, 2021, ALJ Pyrtel held a second hearing (Tr. 1077–1110) and, on November 2, 2021, issued a written decision again concluding that Plaintiff was not disabled (Tr. 1814–36). The Appeals Council denied Plaintiff's request for review on August 2, 2022 (Tr. 1837–43), and he filed an appeal with this court (Tr. 1873).

On July 7, 2023, this court issued an order vacating the Commissioner's decision and remanding the case for further proceedings. (Tr. 1844–75.) A new hearing was held before ALJ Guila Parker on February 12, 2025 (Tr. 1782–1807), and on May 6, 2025, ALJ Parker issued a written decision, also concluding that Plaintiff was not disabled. (Tr. 1746–81.) Plaintiff filed the present action on September 3, 2025. (ECF No. 1.) All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 5, 8), and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found that Plaintiff "has not engaged in substantial gainful activity since July 6, 2017, the alleged onset date." (Tr. 1752.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments

that is "severe." 20 C.F.R. § 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.922(a). The ALJ concluded that Plaintiff has the following severe impairments: "degenerative disc disease of lumbar spine, degenerative joint disease of bilateral knees, bilateral hip osteoarthritis, right foot fracture, obesity, peripheral artery disease, neurocognitive disorder, and adjustment disorder." (Tr. 1752.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 416.909, the claimant is disabled. 20 C.F.R. § 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 416.920(e). The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 1753.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 416.945(a). In making the RFC finding, the ALJ must consider all of the

claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Plaintiff has the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), but he is precluded from climbing ladders, ropes, and scaffolds, and he can only occasionally climb ramps or stairs, balance on uneven terrain, stoop, kneel, crouch, or crawl. He can never work at unprotected heights or operate dangerous moving machinery. He can understand, remember, and carry out short and simple instructions consistent with unskilled work. He can maintain concentration, persistence, and pace sufficient to carry out simple tasks for two-hour intervals over an eight-hour day with customary scheduled breaks. He can also make simple work-related decisions, as well as tolerate occasional changes in a routine work setting.

(Tr. 1756.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.960. The ALJ concluded that Plaintiff has no past relevant work. (Tr. 1766.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 1767.) Representative jobs include parimutuel ticket

checker (DOT number 219.587-010), document preparer, microfilming (DOT number 249.587-018), and telephone quotation clerk (DOT number 237.367-046). (*Id.*)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

### 4. Analysis

#### 4.1. Subjective Symptom Evaluation

The ALJ must assess a claimant's symptoms (*i.e.*, "the individual's own description or statement of his or her physical or mental impairment(s)") using a two-step process. SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id*. In addition to considering all other relevant evidence, the ALJ must also consider the following factors to the extent they are relevant:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. The ALJ's conclusion is entitled to "special deference," and the court may disrupt it only if that assessment was "patently wrong." *Burmester*, 920 F.3d at 510; *Summers*, 864 F.3d at 528.

The ALJ summarized Plaintiff's subjective symptom allegations from the administrative hearings held in August 2021 and February 2025. (Tr. 1757.) She concluded that, although Plaintiff's impairments could reasonably be expected to produce his alleged symptoms, his statements about their intensity, persistence, and limiting effects were inconsistent with the overall evidence. (*Id.*) The ALJ then addressed each impairment individually, explaining why the objective evidence did not support Plaintiff's testimony. (*Id.*)

Plaintiff argues that the ALJ violated SSR 16-3p by failing to provide "specific reasons" for discounting his subjective symptom allegations. (ECF No. 14 at 14.) He claims that the ALJ improperly relied on generalized improvement with treatment, without identifying evidence that such improvement restored his ability to work. (*Id.* at 14–15.) Specifically, he contends that medical evidence from 2022 to 2024 shows degenerative changes in his hip and right knee, suggesting that he continued to suffer from pain and limitations. (*Id.* at 15.)

The ALJ acknowledged degenerative changes in Plaintiff's right knee but concluded his symptoms were less severe than alleged because his medical records from 2022 to 2024 did not indicate a significant worsening of his knee. (Tr. 1760 (citing 31F at 19; 37F at 2; 39F at 41).) In reviewing Plaintiff's right knee problems, the ALJ noted that, despite advanced degenerative changes, a 2022 exam showed that Plaintiff could "ambulate independently, with symmetrical strength and no noted neurological deficits." (Tr. 1758 (citing 31F at 4).) The ALJ also noted that, although Plaintiff stated he would likely need a right knee replacement, recent medical records and exams did not corroborate this claim. (Tr. 1760 (citing 31F at 19; 37F at 2; 39F at 41).)

The ALJ also discussed Plaintiff's hip problems, referencing exams from 2022 to 2025 that showed "largely intact musculoskeletal and neurological functioning, including normal gait, strength, and sensation." (Tr. 1759–1760 (citing 31F at 4, 14–15, 17, 19; 37F at 2; 39F at 41).) Medical records documented that Plaintiff "experienced improved hip functioning following his replacement in 2022." (Tr. 1760.) While the ALJ acknowledged that Plaintiff was likely to experience some pain, she found that the objective evidence did not support his claim of an "inability to perform primarily seated work, with the ability to stand up, walk around, and rest as needed during the typically provided work breaks." (Tr. 1761.)

An ALJ's credibility finding must be "supported by the evidence and be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft*

*v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)). Here, the ALJ gave several specific reasons for concluding that Plaintiff's subjective symptoms were not as severe as alleged. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) (explaining that "[a]s long as an ALJ gives specific reasons supported by the record, [the court] will not overturn a credibility determination unless it is patently wrong"). The ALJ reasonably discounted Plaintiff's testimony due to discrepancies between his reports of severe pain and medical records showing stability and improvement in his impairments. *See Schmidt v. Astrue*, 496 F.3d 833, 843–44 (7th Cir. 2007) (holding that the ALJ did not err in discounting a claimant's reports of pain where they were not supported by the medical record). For these reasons, the court cannot find that the ALJ's credibility determination was "patently wrong." *See Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (noting that an ALJ's decision is "patently wrong if the decision lacks any explanation or support").

Plaintiff also contends that the ALJ improperly relied on his lack of accommodations while in jail and failed to consider the limitations on his daily activities. (ECF No. 14 at 15.) However, the ALJ was not required to address every SSR 16-3p factor, and Plaintiff cites no authority to suggest that acknowledging his lack of jail accommodations was improper. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023) (explaining that an ALJ need not discuss every regulatory factor to support her conclusion). Moreover, the ALJ specifically addressed Plaintiff's activities of daily living,

noting that his symptoms "interfered with his ability to perform basic activities," but also observing that in 2023 his doctor reported he could complete activities of daily living independently. (Tr. 1760 (citing 31F at 21).)

An ALJ's assessment of a claimant's symptoms is entitled to special deference, and Plaintiff fails to demonstrate that the ALJ's symptom evaluation was "patently wrong." *See Summers*, 864 F.3d at 528. Therefore, reversal on this basis is unwarranted as the ALJ's credibility determination was supported by substantial evidence. *See Schrank v. Saul*, 843 Fed. App'x 786, 789 (7th Cir. 2021) (explaining that the court will not reverse a credibility determination "as long as the ALJ provided at least one reason to support the finding") (citing *McKinzey v. Astrue*, 641 F.3d 884, 890–91 (7th Cir. 2011)).

### 4.2. Leg-Elevation Accommodation

Plaintiff contends that the ALJ failed to build a logical bridge between the evidence and her conclusion that he did not require a leg elevation accommodation. (ECF No. 14 at 10–11.) He argues the ALJ erred by relying on state agency medical consultant Dr. Mina Khorshidi's opinion, claiming that Dr. Khorshidi did not address certain conditions (severe disc disease, joint disease, osteoarthritis, or foot fracture) in assessing his need for this accommodation. (*Id*. at 11.) Plaintiff further contends that the ALJ improperly relied on the absence of edema, his lack of jail accommodations, and ignored "potentially favorable evidence" when deciding he did not need this accommodation. (*Id*. at 12–13.)

An RFC is an administrative assessment describing the extent to which an individual's impairments may cause physical or mental limitations or restrictions that could affect an ability to work. SSR 96-8p. The ALJ's RFC finding represents her assessment of "the maximum [Plaintiff] can do—despite his limitations—on a 'regular and continuing basis,' which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting SSR 96-8p)). The ALJ must assess Plaintiff's physical RFC "based on all the relevant evidence" in his case record, including severe and non-severe impairments as well as medical and non-medical evidence. 20 C.F.R. § 404.1545(e). "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

The ALJ acknowledged Plaintiff's testimony that he needed to keep his legs elevated throughout much of the day to avoid pain and swelling. (Tr. 1761.) However, she found that his medical records did not support this claim, noting that Plaintiff's "medical providers themselves have failed to indicate that [] [he] needs to elevate his legs." (*Id.*) The ALJ cited records showing improvement in Plaintiff's foot ulcers and examinations that did not document significant lower extremity edema — a condition

that could justify such an accommodation.[1] (*Id.* (citing 24F at 63; 31F at 4, 14–15, 17, 19; 37F at 2; 39F at 41).) She also considered Plaintiff's peripheral artery disease and his need for stent procedures but concluded that the objective evidence from these conditions alone did not support a leg elevation accommodation. (Tr. 1761.)

To further support her conclusion, the ALJ noted that, while Plaintiff was in jail, he requested an accommodation to elevate his legs, but his medical providers denied the request, stating it was not medically necessary. (Tr. 1761 (citing 37F at 7).) The ALJ also relied on Dr. Khorshidi's opinion, noting that Dr. Khorshidi had reviewed Plaintiff's entire record except for one recently submitted exhibit. (*Id.* (citing 38F).) Dr. Khorshidi opined that Plaintiff's medical records did not support a leg elevation accommodation. (Tr. 1761.)

Based on the above analysis, the ALJ provided an adequate rationale for rejecting Plaintiff's claimed need for a leg elevation accommodation. She cited several medical records that did not support Plaintiff's reports of leg swelling and specifically pointed to the absence of edema as evidence that the accommodation was unnecessary. (Tr. 1761.) The ALJ also explained that none of Plaintiff's medical providers recommended a leg elevation accommodation, and that Dr. Khorshidi agreed it was not medically necessary. (*Id.*) This reasoning established a logical connection between the evidence and the ALJ's

---

[1] Edema is defined as "swelling caused by too much fluid trapped in the body's tissues." *See* Edema, Mayo Clinic (May 21, 2026), https://www.mayoclinic.org/diseases-conditions/edema/symptoms-causes/syc-20366493.

conclusion. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (noting that the court's role is to determine whether the ALJ's decision "reflects an adequate logical bridge from the evidence to the conclusions"). The ALJ further referenced Plaintiff's lack of accommodations in jail as additional support for her decision. (Tr. 1761.) Plaintiff does not cite, nor is the court aware of, any authority suggesting that this was improper.

The Seventh Circuit Court of Appeals has consistently held that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 Fed. App'x 838, 844 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)); *see also Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (explaining that "[e]stablishing the existence of an impairment is not enough. The claimant must present evidence of limitations affecting their capacity to work"). Because Plaintiff did not provide any objective evidence that the ALJ erred by declining his accommodation request, reversal on this basis is unwarranted. *See Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010) (noting that an ALJ's decision will be upheld unless "the record compels a contrary result").

### 4.3. Vocational Expert

Lastly, Plaintiff contends that the ALJ's decision should be reversed because the jobs identified by the vocational expert are either obsolete or do not exist in significant numbers. (ECF No. 14 at 5.)

At the administrative hearing, vocational expert Dennis Gustafson testified that an individual with Plaintiff's RFC could perform the following jobs:

1. Parimutuel Ticket Checker (DOT # 219.587-010; approximately 8,300 jobs nationally);
2. Document Preparer, Microfilming (DOT # 249.587-018; approximately 14,000 jobs nationally); and
3. Telephone Quotation Clerk (DOT # 237.367-046; approximately 5,900 jobs nationally).

(Tr. 1801.)

### 4.3.1. Parimutuel Ticket Checker

Plaintiff first argues that the parimutuel ticket checker job does not exist in significant numbers and that the ALJ uncritically accepted the vocational expert's testimony regarding the number of such jobs available. (ECF No. 14 at 5.)

At the administrative hearing, the ALJ asked VE Gustafson what sources he relied on to support his testimony. (Tr. 1803.) VE Gustafson replied that he used "Job Browser Pro, version 1.7.5.1, which is published on SkillTRAN." (*Id*.) The ALJ then asked about his general methodology for estimating the number of jobs in the economy for the parimutuel ticket checker, document preparer, microfilming, and telephone quotation clerk occupations. (*Id*.) VE Gustafson explained:

> "I rely on SkillTRAN to make the job estimates [] … Basically, what they do is they use a variety of, the Department of Labor publication census data and so forth, and the data, of course today in the method and gathered via census code, or SOC [standard occupational classification] codes, and then what SkillTRAN does is they extrapolate from those numbers what the specific numbers would be under DOT [Dictionary of Occupational Titles] classifications to form their estimates, and that's what I report."

(Tr. 1803–1804.)

The ALJ followed up by asking VE Gustafson whether the job numbers seemed reasonable based on his professional experience, and he confirmed that they did. (Tr. 1804.) She also asked if there were any differences between his sources and the regulatory definitions of exertions, skill level, or education for those jobs. VE Gustafson responded no. (*Id.*) He further testified that he relied on his education, training, and professional experience in answering the ALJ's questions. (*Id.*)

Plaintiff's attorney, David Hudec, questioned VE Gustafson about the document preparer, microfilming, and telephone quotation clerk jobs, but did not ask any questions about the parimutuel ticket checker position. After the hearing, Attorney Hudec submitted a letter objecting to VE Gustafson's testimony, arguing that the document preparer, microfilming, and telephone quotation clerk jobs have "substantially changed in duties from those described in the D.O.T." (Tr. 2179.) Notably, he did not object to VE Gustafson's testimony regarding the parimutuel ticket checker job.

"When no one questions the [VE's] foundation or reasoning, an ALJ is entitled to accept the [VE's] conclusion ...." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). "Accordingly, a claimant who does not object to a VE's testimony during the administrative hearing forfeits those objections." *Fetting v. Kijakazi*, 62

F.4th 332, 337 (7th Cir. 2023) (citing *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016)).

In this case, Attorney Hudec did not object to VE Gustafson's testimony about the parimutuel ticket checker job, either at the administrative hearing or in his post-hearing letter. As a result, this argument was forfeited on appeal. *See Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004).

Regardless, when the ALJ questioned VE Gustafson about his sources, VE Gustafson explained that he used Job Browser Pro, published by SkillTRAN, and described how SkillTRAN estimates national job numbers. *See Chavez v. O'Malley*, 96 F.4th 1016, 1023 (7th Cir. 2024) (affirming a vocational expert's reliance on Job Browser Pro); *see also Bruno v. Saul*, 817 F. App'x 238, 241 (7th Cir. 2020) (affirming vocational expert testimony based on the "SkillTRAN" approach). VE Gustafson also confirmed, in response to the ALJ's questions, that his sources did not conflict with the Dictionary of Occupational Titles. (Tr. 1804.)

Therefore, the ALJ did not "uncritically accept" VE Gustafson's testimony and had no reason to question the reliability of his job number estimates. *See Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (finding the ALJ was entitled to credit the vocational expert's testimony where the plaintiff's attorney failed to object during the administrative hearing).

### 4.3.2. Document Preparer, Microfilming

Plaintiff next argues that the ALJ erred by relying on the document preparer, microfilming job because VE Gustafson did not explain how the current requirements of the job align with Plaintiff's residual functional capacity. (ECF No. 14 at 6–7.) Plaintiff also contends that VE Gustafson's national estimate of 14,000 positions is speculative and unreliable. (*Id*. at 7.)

On January 5, 2025, the Social Security Administration issued Emergency Message EM-24027, which stated that certain jobs in the Dictionary of Occupational Titles "may refer to job materials or processes that have been replaced by more modern materials or processes." SSR EM-24027. Document preparer, microfilming was among the jobs identified. *Id*. To rely on this job, an ALJ must "obtain additional evidence from a VE supporting the ALJ's conclusion that, as the occupation is currently performed, its requirements are consistent with the claimant's RFC and that it exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant." *Stephen B. v. Bisignano*, No. 24-CV-1647, 2025 WL 3748306, at *8 (E.D. Wis. Dec. 23, 2025).

The ALJ asked VE Gustafson whether jobs exist in the national economy for a hypothetical individual with Plaintiff's RFC. (Tr. 1801.) VE Gustafson responded yes and identified document preparer, microfilming as one example. (*Id*.) He

explained that the job is classified as unskilled (SVP: 2) sedentary work. (*Id*.) He further explained that microfiche was previously used in the printing and publishing industry, but today it is used to secure documents in electronic databases. (*Id*.)

Attorney Hudec asked VE Gustafson whether the document preparer, microfilming job is currently performed as described in the Dictionary of Occupational Titles. (Tr. 1805.) VE Gustafson confirmed that it is, noting that microfilming is now mainly used for data security and archival purposes. (*Id*.) He acknowledged that some equipment has changed but maintained that the job's requirements remain the same, as SkillTRAN still classifies it as unskilled. (*Id*.)

In his post-hearing letter, Attorney Hudec argued that the duties of the document preparer, microfilming job have substantially changed from those described in the Dictionary of Occupational Titles. (Tr. 2179.) He further claimed that VE Gustafson failed to "crosswalk between the now modified jobs as actually performed in the economy to the basis for the number for the modified jobs and not the D.O.T. described jobs." (*Id*.)

The ALJ addressed Attorney Hudec's objection in her opinion. (Tr. 1768.) She concluded that his argument lacked support and that VE Gustafson had adequately considered any changes to the document preparer, microfilming job

when providing his testimony. (Tr. 1769.) The ALJ also found that VE Gustafson provided a reliable basis for his opinions. (*Id.*)

Plaintiff cites two cases to support his argument that the document preparer, microfilming job is obsolete: *Gulley v. Berryhill*, No. 17-CV-1782, 2019 WL 668836 (E.D. Wis. Feb. 19, 2019), and *Green v. Kijakazi*, No. 20-CV-969, 2021 WL 3260860 (E.D. Wis. Jul. 29, 2021). In both cases, however, the vocational expert did not explain how the document preparer, microfilming job is performed in the current economy. In contrast, VE Gustafson described how the job is currently performed, outlined SkillTRAN's method for estimating job numbers, and confirmed that the job aligned with the hypothetical individual's RFC. *See Stephen B.*, 2025 WL 3748306, at *8 (affirming an ALJ's reliance on a VE's testimony regarding the changes and availability of the document preparer, microfilming occupation).

Plaintiff also argues that the VE's testimony was unreliable because a "microfiche document preparer working in an archival field is *likely* to require some degree of training or knowledge in that area …." (ECF No. 14 at 7) (emphasis added)). However, he provides no evidence to support this claim. Without evidence undermining VE Gustafson's credibility, the court cannot conclude that the ALJ erred in relying on his testimony to support her decision. *See Chavez*, 96 F.4th at 1022 (explaining that "[a]ll the substantial evidence standard requires is

that a vocational expert gave enough detail for the court to understand the sources of his data and the general process he adopted").

### 4.3.3. Telephone Quotation Clerk

Lastly, Plaintiff argues that VE Gustafson's testimony about the telephone quotation clerk job is unsupported. (ECF No. 14 at 8.) At the administrative hearing, Attorney Hudec asked VE Gustafson whether, given the rise of the internet, people still work as telephone quotation clerks. (Tr. 1806.) VE Gustafson answered yes and explained:

> "[A] lot of older people who actually are the primary holders of stock do not or prefer not to use computers. And so, that service still exists, but there's much fewer people doing it than used to do it years ago. So, the brokerage houses have that type of service for people, where they can call up and find out what the, get the quotation. So, I know it exists."

(Tr. 1806.)

VE Gustafson stated that he relied on SkillTRAN to estimate that 5,400 telephone quotation clerk jobs exist nationally. (Tr. 1806.) Attorney Hudec responded, "very good," and concluded his questioning. (*Id*.)

While courts have expressed skepticism about the continued existence of this job, ALJs may rely on a vocational expert's testimony unless there is evidence that the testimony is unreliable. *See Norman v. Commissioner of Social Security*, No. 1:24-CV-57, 2025 WL 900543, at *5 (N.D. Ind. Mar. 24, 2025) (explaining that

an "ALJ's duty [is] to ascertain that the VE's numbers are not made out of whole cloth") (citing *Chavez v. Berryhill*, 895 F.3d 962, 970 (7th Cir. 2018)).

VE Gustafson provided a reasonable explanation for how he estimated the number of available telephone quotation clerk positions, citing SkillTRAN as his source. *See Chavez*, 96 F.4th at 1023 (noting that SkillTRAN is a "well-accepted" source for estimating national job numbers). He also confirmed that these numbers were consistent with his professional experience. (Tr. 1804.) Thus, Plaintiff's claim that VE Gustafson's testimony was unsupported lacks merit. *See Smith v. Kijakazi*, No. 22-CV-163-SLC, 2023 WL 4579444, at *7 (W.D. Wis. Jul. 18, 2023) (rejecting the argument that the telephone quotation clerk occupation was obsolete because the plaintiff did not cite any authority "showing that the telephone quotation clerk job is so outdated that no reasonable ALJ could rely on it") (citing *Everson v. Kijakazi*, No. 21-CV-716-SCD, 2022 WL 3656462, at *8 (E.D. Wis. Aug. 25, 2022)).

Plaintiff also argues that searching the O*NET database redirects this job to "Receptionists and Information Clerks," which he claims requires a higher skill level, making VE Gustafson's testimony unreliable. (ECF No. 14 at 9.) However, courts have repeatedly rejected this argument, holding that an ALJ is not required to reconcile differences between a vocational expert's testimony and the O*NET database. *See Ragland v. Berryhill*, No. 17-C-0730, 2018 WL 1757656, at *11 (E.D. Wis. Apr. 12, 2018) (citing *Fender v. Berryhill*, No. 1:17-cv-00041-RJC, 2018 WL 1536485,

at *4 (W.D. N.C. Mar. 29, 2018) (collecting cases holding that an ALJ does not have a duty to address conflicts between VE testimony and O*NET)).

In summary, the ALJ did not err in relying on VE Gustafson's testimony. VE Gustafson identified his sources, explained his methodology for estimating job numbers, and confirmed that the proposed jobs aligned with Plaintiff's RFC. *See Ruenger v. Kijakazi*, 23 F.4th 760, 764 (7th Cir. 2022) (explaining that "testimony meets the substantial evidence threshold when the vocational expert 'cogently and thoroughly' describes a well-accepted methodology") (quoting *Biestek v. Berryhill*, 587 U.S. 97, 105 (2019)). Accordingly, the court finds that the ALJ's decision is supported by substantial evidence.

## 5. Conclusion

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED.** The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 21st day of July, 2026.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge